UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

AMY LYNN-TRIMBLE POSTMA,

        Defendant.
_____/

Case No.: 2:24-cr-01

Hon. Jane M. Beckering
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Amy Lynn-Trimble Postma and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Plea to Information</u>. Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information, charging her with knowingly and intentionally acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, in violation of 21 U.S.C. § 843(a)(3).

2. <u>Defendant Understands the Crime</u>. In order for Defendant to be guilty of violating 21 U.S.C. § 843(a)(3), the following must be true: on or about September 30, 2022 in the Northern Division of the Western District of Michigan, the defendant knowingly or intentionally acquired or obtained possession of a controlled substance and utilized misrepresentation, fraud, forgery, deception, or subterfuge to acquire or obtain the controlled substance. Defendant is pleading guilty because Defendant is guilty of the charge described above.

3. <u>Defendant Understands the Penalty</u>.  The statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. § 843(a)(3) is the following: four years of imprisonment; a one-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100.

4. <u>Assessments, Restitution, Other Criminal Monetary Penalties, and Financial Cooperation</u>.

    a. <u>Assessment</u>. Defendant agrees to pay the special assessment on the day of sentencing.

    b. <u>Restitution</u>.  Pursuant to 18. U.S.C. § 3663(a)(3) Defendant agrees to make full restitution for the losses caused by her activities.  Defendant agrees that the restitution order is not restricted to the victim or conduct alleged in the Felony Information to which Defendant is pleading guilty and includes losses incurred by all victims of her scheme to obtain controlled substance prescriptions through fraud, misrepresentations and other means. Defendant agrees that restitution will be based on the amount that Medicare and insurance providers paid for prescriptions for controlled substances that Defendant wrote or that Defendant had a physician assistant write and then filled for her own use. The parties currently believe that the applicable amount of restitution is at least $2,133.71 based on the amounts that Medicare paid for unnecessary controlled substance prescriptions Defendant wrote for her mother and then kept for herself.  The parties recognize and agree that this amount will likely increase based on information yet to be received from insurance providers that paid for additional controlled

substance prescriptions Defendant obtained through fraud. The Court will determine the final amount of restitution at sentencing. Defendant agrees to pay restitution to the fullest extent possible at or before the time of sentencing by submitting funds to the Clerk of Court.

    c.    <u>Financial Cooperation</u>. Defendant also:

        i. agrees to fully and truthfully complete and return the financial disclosure form the U.S. Attorney's Office provides, including any waivers, consents, or releases requested to access records to verify the financial information within 30 days of the date of this plea agreement;

        ii. agrees that any restitution or other criminal monetary penalties imposed by the Court shall be due and payable immediately, any payment plan set by the Court represents a minimum payment obligation, and the United States may immediately enforce the judgment in full; and

        iii. agrees that prior to sentencing, she will not sell or give away any asset worth $5,000 or more, without first notifying the U.S. Attorney's Office. Defendant also agrees to notify the U.S. Attorney's Office of any proceeding, such as foreclosure or divorce, that may impact Defendant's financial condition.

    5.    <u>Suspension/Revocation of Professional License</u>. Defendant understands that if she holds a professional license, the conviction in this case may result in the suspension or revocation of that license.

    6.    <u>Consent To Have United States Magistrate Judge Preside Over Guilty Plea.</u> Defendant hereby acknowledges the following: that she understands the

federal charge against her and the possible penalties; that she desires to enter a plea of guilty pursuant to this plea agreement; that she has the right to have all proceedings, including the plea hearing, conducted by the United States District Judge assigned to this case; and that a United States Magistrate Judge may conduct the plea hearing with Defendant's consent and the consent of her attorney and the Assistant United States Attorney. Understanding these rights, Defendant freely and voluntarily consents to having a United States Magistrate Judge preside over the guilty plea hearing and gives up her right to proceed before a United States District Judge. Defendant understands that the United States District Judge will accept or reject the plea, accept or reject the plea agreement, and will impose sentence.

7. <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

  a. Defendant is a physician licensed to practice medicine in the State of Michigan.

  b. From 2018 to 2022, Defendant forged 55 prescriptions for Schedule II controlled substances and thereby obtained approximately 11,365 opioid pills by fraud.

  c. Defendant wrote these fraudulent prescriptions in the name of her ex-husband, her mother, her son, and her then-boyfriend's daughter. All of the prescriptions were written by Defendant so she could acquire and obtain possession of the controlled substances for her own use.

        Defendant also pressured a nurse practitioner with whom she worked to give her signed blank prescriptions.

    d. Specifically, on or about September 30, 2022, Defendant wrote a prescription for Percocet (Oxycodone-Acetaminophen 10-325), a Schedule II controlled substance, in the name of her ex-husband. Defendant's ex-husband was not a patient of the Defendant. That same day, Defendant had the prescription filled and picked it up at a pharmacy in St. Ignace, Michigan. The prescription contained 180 Percocet pills that Defendant kept for her own personal use.

8. <u>Supervised Release Defined</u>. Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if she violates one or more of the conditions of any supervised release imposed, she may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9. <u>Exclusion from Participation</u>. The parties agree that, pursuant to 42 U.S.C. § 1320a-7, upon conviction Defendant will be mandatorily excluded from participation in any federal health care program as defined in 42 U.S.C. § 1320a-7b(f), for a period of at least five years in that the Defendant will not be able to receive payments made by any federal healthcare program for any items or services Defendant were to furnish, order, or prescribe during Defendant's period of

5

exclusion. The parties agree that this exclusion does not affect Defendant's rights to collect benefits to which she may be entitled as a beneficiary under any Federal program such as Medicare, Medicaid, or Social Security for treatment of her personal medical condition(s).

10. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

11. <u>Prison Placement</u>. The U.S. Attorney's Office will not object to a request by Defendant that the Court recommend that Defendant be confined at any particular institution. Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

12. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing

Defendant. Defendant understands that the Court, with the aid of the presence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

13. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

14. <u>Waiver of Constitutional Rights</u>. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

7

      a.     The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

      b.     The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

      c.     The right to confront and cross-examine witnesses against Defendant.

      d.     The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

      e.     The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

      f.     By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15.     <u>FOIA Requests.</u>  Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the

Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

16. <u>Hyde Waiver.</u>  Defendant acknowledges, by her voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

17. <u>The Court is not a Party to this Agreement</u>.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw her guilty plea, and she will remain bound to fulfill all of her obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

18. <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

19. <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.  In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  Defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

20. <u>This is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

21. <u>Deadline for Acceptance of Agreement</u>.  If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by February 2, 2024 at 3:00 p.m., this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S.

Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

February 5, 2024
Date

MARK A. TOTTEN
United States Attorney

JOEL S. FAUSON
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

2·2·2024
Date

AMY LYNN-TRIMBLE POSTMA,
Defendant

I am Amy Lynn-Trimble Postma's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

2-5-24
Date

CHRISTOPHER COOKE
Attorney for Defendant

11